NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JUN 29 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 15-50247 |
| Plaintiff-Appellee, | D.C. No. 2:07-cr-01221-GHK-1 |
| v. | |
| STANLEY DAN RECZKO III, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
George H. King, District Judge, Presiding

Argued and Submitted February 10, 2020
Pasadena, California

Before: BERZON, TALLMAN, and R. NELSON, Circuit Judges.

Stanley Reczko appeals his conviction for producing child pornography

under 18 U.S.C. § 2251(c) and for doing so while being required to register as a

sex offender under 18 U.S.C. § 2260A. Reczko received a life sentence for the first

count, because of a recidivism sentencing enhancement, and a consecutive ten-year

sentence for the second count. We affirm his conviction and his sentence.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

1. The district court did not violate Reczko's Sixth Amendment right to counsel by denying his requests for substitute counsel. "To evaluate whether a district court abused its discretion in denying a motion to substitute counsel, we consider three factors: (1) the adequacy of the district court's inquiry; (2) the extent of the conflict between the defendant and counsel; and (3) the timeliness of defendant's motion." *United States v. Velazquez*, 855 F.3d 1021, 1034 (9th Cir. 2017) (internal quotation marks omitted). Reczko's motions were timely, but neither of the other two factors weigh in his favor.

The district court conducted multiple inquiries into the relationship between Reczko and his attorneys. These were more than "perfunctory inquiries," *United States v. Adelzo-Gonzalez*, 268 F.3d 772, 778 (9th Cir. 2001); at one hearing, for example, the district court invited Reczko "to tell [the court] one by one" of any additional complaints he had, *see id.* at 777.

The record reflects extensive conflict between Reczko and his counsel, but conflicts arising from a defendant's "general unreasonableness or manufactured discontent" are generally not incompatible with continued representation. *United States v. Smith*, 282 F.3d 758, 763–764 (9th Cir. 2002). Reczko repeatedly refused to communicate with and, at times threatened, his lawyers. Despite this conflict, his lawyers worked in Reczko's interest and did not "virtually abandon[] [their] representation" of him. *Adelzo-Gonzalez*, 268 F.3d at 779.

2. The district court did not err when it did not proactively reappoint counsel for Reczko. In the absence of an "express[] request[]" for counsel, "the essential inquiry is whether circumstances have sufficiently changed since . . . the *Faretta* inquiry that the defendant can no longer be considered to have knowingly and intelligently waived the right to counsel." *United States v. Hantzis*, 625 F.3d 575, 581 (9th Cir. 2010). Here, before he represented himself, Reczko acknowledged the limitations he might face with regard to his ability to represent himself while incarcerated.  Because his circumstances did not later vary, it was appropriate for the district court to conclude that Reczko's waiver of the right to counsel remained knowing and intelligent.

3. The district court also did not err by denying Reczko's explicit request for reappointment of counsel in December 2014, two months before Reczko's trial was scheduled to and ultimately did begin. The district court construed Reckzo's request as a request for a continuance, as our caselaw permits. *See United States v. Nguyen*, 262 F.3d 998, 1001–02 (9th Cir. 2001). We weigh five factors when reviewing the denial of a continuance: "(1) whether the continuance would inconvenience witnesses, the court, counsel, or the parties; (2) whether other continuances have been granted; (3) whether legitimate reasons exist for the delay; (4) whether the delay is the defendant's fault; and (5) whether a denial would prejudice the defendant." *United States v. Thompson*, 587 F.3d 1165, 1174 (9th

Cir. 2009).

Nearly all these factors weigh against Reczko. At the time of Reczko's request, a continuance would have required the government to renew the process through which it worked with the Philippine government to secure the appearances of certain witnesses (including witnesses Reczko requested), which would have inconvenienced the parties and those witnesses. The district court had previously granted Reczko multiple continuances, including one after Reczko waived his right to counsel. Much of Reczko's reasoning for requesting reappointment at that time was illegitimate. The late date of the request was entirely Reczko's fault, as he could have requested the reappointment of counsel at any point—in fact, months before Reczko's request, the government had asked the district court to evaluate whether Reczko still wished to continue pro se. Finally, Reczko was prejudiced by the denial of his request, but he suffered less prejudice than most defendants who request the reappointment of counsel shortly before trial. Reczko had standby counsel throughout this time, and the district court ultimately appointed his standby counsel to represent him during his trial.

Reczko's "conduct up to that point was clearly dilatory." *Thompson*, 587 F.3d at 1174 (internal quotation marks omitted). We conclude that the district court did not display "unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983)

4

(internal quotation marks omitted).

4. Reczko's waiver of a jury trial on the 18 U.S.C. § 3559(e) sentencing enhancement and the § 2260A charge was adequate. Reczko waived jury trial orally, not in writing, so there is no "presumption that [the waiver] was made knowingly and intelligently." *United States v. Shorty*, 741 F.3d 961, 966 (9th Cir. 2013).

We note that we are troubled by the reliance of district courts on oral waivers, especially in a case like this. Federal Rule of Criminal Procedure 23(a) requires that jury waivers be in writing. Although our caselaw allows some deviation from this requirement, *see Shorty*, 741 F.3d at 966, deviations lead to unnecessary uncertainty as to the validity of the waiver, as this case illustrates. But, although the district court had "reason to suspect [that Reczko] may suffer from mental or emotional instability," *id.* (citation and internal quotation marks omitted), the court's colloquy with Reczko was "in-depth," *id.*, spanning more than ten pages of transcript. During the colloquy, Reczko noted that he had discussed the waiver with his counsel and repeatedly assured the court that he was making the waiver knowingly and intelligently. We conclude that the waiver was valid.

5. Reczko's prior conviction for violating New York Penal Law § 130.35(1) is a "prior sex conviction" under § 3559(e). The New York Penal provision at issue categorically matches § 2241(a) and § 2242, two of the sections specified by

§ 3559(e) as establishing the types of offenses that qualify as "prior sex convictions," when both of the federal provisions are "taken together." *United States v. Bankston*, 901 F.3d 1100, 1103 (9th Cir. 2018) (citation omitted).

New York Penal Law § 130.35(1) prohibits the use of "forcible compulsion" to coerce sexual intercourse. As relevant here, "forcible compulsion" means "to compel" either by "physical force" or "a threat . . . which places a person in fear of immediate death or physical injury." N.Y. Penal Law § 130.00(8). "[P]hysical injury" under New York law encompasses more conduct than "serious bodily injury" under § 2241(a), *compare* N.Y. Penal Law § 130.00(8) *with* 18 U.S.C. § 2246(4), but any conduct that is not covered by § 2241 is covered by § 2242A, which prohibits "caus[ing] another person to engage in a sexual act by threatening or placing that other person in fear," 18 U.S.C. § 2242(1).

Together, § 2241 and § 2242 cover the full range of threats proscribed by the New York provision under which Reczko was previously convicted.

6. The district court did not commit plain error when it instructed the jury on the § 2251(c) count. The jury instruction tracked the statutory language of § 2251(c). *See United States v. Nash*, 115 F.3d 1431, 1435–36 (9th Cir. 1997). It was not apparent that the district court should have additionally instructed the jury that the phrase "for the purpose of" in § 2251(c), a phrase we have never defined in this particular statutory context, was the equivalent of a "but-for" causation

6

requirement.

7. The district court did not abuse its discretion by denying Reczko's requests under Rule 15 to depose two witnesses in the Philippines. "In deciding whether to grant a Rule 15(a) motion, the district court must consider, among other factors, whether the deponent would be available at the proposed location for deposition and would be willing to testify." *United States v. Olafson*, 213 F.3d 435, 442 (9th Cir. 2000). Here, neither of the proposed deponents was willing to testify—as Reczko himself acknowledged—and, as a practical matter, the district court had no authority to compel them to comply with the deposition request, because they were in the Philippines.

8. Reczko's mandatory life sentence under § 3559(e) does not violate the Eighth Amendment. Under the Supreme Court's current interpretation of the Eighth Amendment, we cannot say that the sentence was "grossly disproportionate" to the crime, *Solem v. Helm*, 463 U.S. 277, 288 (1983), given that the current offense must be considered alongside his previous criminal history of sex crime convictions. *See Norris v. Morgan*, 622 F.3d 1276, 1294 (9th Cir. 2010).

9. Because the district court did not err, there was no cumulative error.

**AFFIRMED**

7